IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DONALD CEKORIC, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|         v. | ) | |
| | ) | |
| CLOPAY BUILDING PRODUCTS | ) | |
| COMPANY, INC., | ) | |
|     Defendant and Third-Party | ) | Civil Action No. 05-24 |
|     Plaintiff, | ) | Judge Conti |
| | ) | Magistrate Judge Mitchell |
|         v. | ) | |
| | ) | |
| RANDALL F. LAURICH, | ) | |
| individually and t/d/b/a LAURICH | ) | |
| GARAGE DOORS, | ) | |
|     Third-Party Defendant. | ) | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    <u>Recommendation</u>

It is respectfully recommended that Defendant's Motion for Summary Judgment (Docket No. 28) be denied. It is further recommended that Third-Party Defendant's Motion for Summary Judgment (Docket No. 24) be denied.

II.    <u>Report</u>

Plaintiff, Donald Cekoric, brings this product liability action against Defendant, Clopay Building Products Company, Inc. ("Clopay"), arising out of injuries he sustained when he fell at work and his hand and arm went through glass panels in a garage door that Clopay designed and manufactured. He alleges claims of strict liability, negligence, and breach of warranty.

Defendant has filed a third-party complaint against the installer of the garage door, Randall F. Laurich ("Laurich"), alleging that if the garage door is found to be defective,

Laurich's negligence is the sole and proximate cause of Plaintiff's injuries. Clopay also seeks indemnity or contribution from Laurich.

Presently before the Court are two motions for summary judgment: 1) by Clopay, regarding the claims brought against it by Plaintiff; and 2) by Laurich, regarding the third-party claims brought against it by Clopay. For the reasons that follow, both motions should be denied.

<u>Facts</u>

Plaintiff was employed as a car detailer by Morrow Chevrolet in Beaver Falls, Pennsylvania. (Def.'s Concise Statement Material Facts ¶¶ 2-3; Pl.'s Resp. Statement ¶¶ 2-3.)[1] His job was to clean cars for delivery to customers. (Cekoric Dep. at 18.)[2] While at work, on February 4, 2003, he slipped on a substance on the floor, lost his footing, and fell forward "causing his hand and arm to strike, break and penetrate the glass of a garage door manufactured by Defendant," resulting in severe physical injury. (Am. Compl. ¶ 1.)[3] The garage door was in the down position at the time. (Def.'s Statement ¶ 5; Pl.'s Resp. ¶ 5.)

Plaintiff stated that the floors of the detail bay were slippery because of soap, water, wax, glass cleaner and tire cleaner that was used to detail the cars. (Cekoric Dep. at 36, 48-49.) Plaintiff's expert, Richard Loucks, Ph.D., P.E., states in his report that the service bay has a high potential for slip and fall hazards due to the presence of water, oils and soap on the floor. (Loucks Report at 6-8.)[4]

---

[1] Docket Nos. 36, 38.

[2] Docket No. 31 App. 3.

[3] Docket No. 6.

[4] Docket No. 31 App. 1.

Clopay is the manufacturer of the garage door.  (Def.'s Statement ¶ 6; Pl.'s Resp. ¶ 6.)  It manufactures its garage doors individually to the particular specifications of each order.  (Westerfield Dep. at 41.)[5]  This particular door had eight square feet of glass.  (Scates Report at 3-5.)[6]  The door panes were made of double strength annealed glass ("DSB"), rather than tempered safety glass.  (Westerfield Dep. at 26-28, 31; Laurich Dep. at 85 & Exs. 2-3[7].)

Mark Westerfield, who was the Manager of Engineering Services at Clopay at the time, states that Clopay manufactured garage doors with tempered safety glass as an option and that DSB glass can be both safety (tempered) and non-safety (non-tempered).  (Westerfield Dep. at 19-22.)  Clopay's records indicate that it also manufactured garage doors with plexiglass, which is a kind of plastic and is another safety option.  (Westerfield Dep. at 17-22; Clopay 901D options, at C-20.[8])  When Clopay's customers do not indicate whether glass is to be safety, tempered or non-safety, non-tempered, Clopay interprets this as an order for non-safety, non-tempered glass.  (Westerfield Dep. at 31.)  The only difference is that non-tempered glass is cheaper.  (Id. at 43.)

Westerfield stated that he had no evidence that the garage door in question was supposed to contain safety glass.  (Id. at 69.)  He also said that Clopay relied on its local distributors to provide information about how the garage door was to be applied and whether any local statutes, regulations or building codes applied to the particular installation.  (Id. at 9-12.)

---

[5]Docket No. 31 App. 2.

[6]Docket No. 31 App. 7.

[7]Docket No. 24 Ex. D.

[8]Docket No. 31 App. 6.

3

On January 28, 1999, Morrow Chevrolet submitted a proposal to Laurich to install four garage doors.  (Docket No. 24 Ex. C.)  Randall Laurich stated that he was contacted by Morrow Chevrolet and told to install four doors, exactly the same as he had installed there on a previous occasion.  (Laurich Dep. at 19, 28-27, 73.)  After the conversation, he visited Morrow Chevrolet and measured the space for the installation of the doors.  (Id. at 37-38.)  While he was there, he observed the operations of Morrow Chevrolet, which included washing cars.  (Id. at 42-43.)  On February 9, 1999, he sent an order by fax to Clopay for four garage doors.  The fax order form did not indicate where the garage doors would be used or the type of work being done at Morrow Chevrolet.  Other than faxing the order form, Mr. Laurich had no further contact with Clopay prior to picking up the garage doors.  (Id. at 51 & Ex. 4.)

Mr. Laurich stated that Clopay had no knowledge as to where the garage doors were going to be placed or how they would be used at Morrow Chevrolet.  (Id. at 88.)  He indicated that, in some cases, customers rely on him to advise them as to what type of garage doors were appropriate.  (Id. at 67, 95.)  However, he knew that the door would be installed in the detail department at Morrow Chevrolet and he did see water on the floor from washing cars when he was measuring the space.  (Id. at 35-39, 42-43.)

Procedural History

Plaintiff filed this case on January 10, 2005 and on March 16, 2005, he filed an amended complaint.  The amended complaint alleges that, at the time of its design, manufacture and fabrication, the door was defective and unreasonably dangerous within the meaning of Restatement (Second) of Torts § 402A, and that Defendant breached implied and express warranties that the door and its component parts would be safe and suitable for use at Morrow

4

Chevrolet and for the particular purpose/application for which it would be used.  Plaintiff alleges that the door was defective for its intended use because it did not contain safety glass.

On April 6, 2005, Clopay filed a third-party complaint against Laurich (Docket No. 9). The third-party complaint alleges that, if the door was defective in any way, Laurich's negligence was the sole and proximate cause in that it failed to ascertain the appropriate specifications for the door, provided inappropriate specifications when it knew or should have known that Clopay would reasonably rely on those specifications in its manufacture of the door, failed to recommend to Morrow Chevrolet that a different type of safety glass should be used, failed to warn Morrow Chevrolet of any hazards, failed to properly inspect the circumstances under which the door would be used, failed to ensure that the specifications submitted complied with all applicable statutes, government regulations and/or building codes and was inattentive to the circumstances then and there existing.  Clopay alleges, in the alternative, that Laurich is liable to it for contribution or indemnity.

On July 27, 2006, Laurich filed a motion for summary judgment as to the third-party complaint filed against it by Clopay.  That same day, Clopay filed a motion for summary judgment as to Plaintiff's claims against it.

Standard for Summary Judgment

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any

element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty-Lobby, Inc., 477 U.S. 242, 248 (1986).

Clopay's Motion for Summary Judgment

Clopay argues that Plaintiff's claims should be dismissed because "a garage door which is not used for ingress or egress in the closed position is not a product that requires safety glass pursuant to the 1999 BOCA code, 35 P.S. §[§] 5811, 5814 and 34 Pa. Code Section 47.398." (Def.'s Br. at 4.)[9] Defendant argues that all of Plaintiff's claims should be dismissed as a matter of law because the codes cited by Plaintiff are not applicable and because Plaintiff has not cited evidence to support its claim that the product was defective.

Defendant's expert, John E. Scates, P.E., states in his expert report that Plaintiff's expert has misread the codes and that safety glass is not required unless a door is a "means of egress," that is, "the required planned emergency escape route or routes out of a building." (Scates Report at 3.)[10] Because the garage door at issue does not fall within the definition of "means of

---

[9] Docket No. 29.

[10] Docket No. 31 App. 7.

egress," Mr. Scates concludes that the codes do not require that it contain safety glass.

As an initial matter, it is noted that, although Plaintiff's expert, Dr. Loucks, cites the codes in his opinion as one basis for concluding that the garage door was defective, he also concludes that the door was dangerous for its intended use.  (Loucks Report at 8.)  Thus, Plaintiff's theory of liability is not exclusively based on the codes in question.

Moreover, Clopay has failed to address some basic concepts.  First, it has not addressed how the codes are applicable to the issues in this product liability case.  It only seeks to have this Court determine whether it was required to manufacture the garage door with safety glass under the codes.  Clopay never provides any rationale regarding how this finding would affect Plaintiff's product liability action under the theories of strict liability, negligence, or breach of warranty.  It only argues, without any citation to relevant authority,[11] that if the codes are not applicable, then the product is not defective and the entire case should be dismissed.

Second, the Pennsylvania Supreme Court has held that industry standards such as codes cannot be introduced in a product liability action to demonstrate either that a product was defective or that it was not.  Lewis v. Coffing Hoist Division, Duff-Norton Co., Inc., 528 A.2d 590, 593-94 (Pa. 1987).  The court explained in Lewis that negligence concepts are not appropriate in a strict liability analysis, and as such evidence of industry standards are properly excluded from this analysis.  Thus, the codes are not relevant to Plaintiff's strict liability cause of

---

[11]Clopay cites only two cases in its entire brief.  The first was an action in trespass which involved the doctrine of res ipsa loquitur, which is not applicable in this case.  Bourlier v. Bell Tel. Co. of Pa., 17 Pa. D. & C.3d 343 (C.P. Phila. Cty. 1980).  In this case, Plaintiff asserts negligence based on Clopay's knowledge of the door's environment and intended use.  The second case was also an action in trespass against a residential homeowner, and the only issue determined was whether the BOCA and related codes applied to homeowners, an issue not relevant in this case.  Pensabene v. Santino, 28 Pa. D. & C.3d 653 (C.P. Montgomery Cty. 1982).

action.

The <u>Lewis</u> court also noted that industry standards are relevant to the negligence concept of reasonable care and would be appropriate when evaluating the manufacturer's conduct in making a design choice under a negligent design cause of action.  <u>Id.</u> at 594.  However, Clopay has failed to provide any rationale applying the codes to Plaintiff's negligence claim.

 Finally, a material issue of fact remains regarding the use of the doors in question, and thus, the question posed by Clopay regarding the application of the codes cannot be resolved on summary judgment.  Clopay's motion characterizes Plaintiff's testimony as supporting its analysis that the garage door in question was not used for ingress and egress.  This is not an accurate summary of Plaintiff's testimony.

Plaintiff stated that the purpose of the garage door is to allow the entry of vehicles into the structure so that detail work could be performed.  (Cekoric Dep. at 22.)  However, he also indicated that customers at Morrow Chevrolet would walk up to and knock on the garage door of the detail bay in order to gain entrance, even though there is a "man door" for them to use.  (<u>Id.</u> at 42-43.)

When asked if people use the man door, he responded: "Either that or they walk in the garage door." (<u>Id.</u> at 19.)  Later in the deposition, the following exchange took place:

Q.    Now, you say there have been times that customers have come into the detail bays; is that right?

A.    Yes. Most people don't think, they just decide to walk in.

      ...

Q.    Okay. So really the only time customers come in the garage through the garage door is if the garage door was open?

8

A.     Yes.

Q.     Okay.

A.     I have seen customers that did not see this door and walk up and knock on the door until someone recognizes they were there, I have seen that.

Q.     They wouldn't walk into the door by mistake or anything like that, they would knock on it to get your attention?

A.     I couldn't tell you if they would walk into it.

(Id. at 42-43.)

Thus, Plaintiff clearly testified that the door was a point for some level of ingress and egress. Clopay's assertion that there is no issue of material fact regarding whether the door was used for ingress and egress simply ignores or mischaracterizes Plaintiff's testimony to the contrary. Further, Clopay's rationale that the door does not qualify under the codes as a door used for ingress and egress is not supported by citation to any relevant legal authority. Clopay simply proclaims that:

> when the garage door was down (as it was when the incident occurred), Mr. Cekoric specifically indicated that customers would not walk through that door to enter the detail shop, but would use the man door nearby. As such, section 1 of 2406.2 of the BOCA Code does not apply.

(Docket No. 29 at 6.) Clopay offers no support for its conclusion that a door is evaluated for its use only when in a closed position, or that the door is evaluated for its use in the position that it was in when the injury occurred. As such, its mere assertions that the garage door does not fit within the definition within the codes of a door that is used for ingress or egress are insufficient to support summary judgment. Further, there is evidence, in the form of Plaintiff's deposition testimony, that the door was used to some extent for ingress and egress. Thus, a genuine issue of

9

fact remains regarding the use of the door in question.

In sum, Clopay has failed to provide the Court with the relevant legal precepts to support its analysis, has failed to establish how the codes are applicable to the theories of recovery presented in this case, and has failed to establish that no issue of material fact remains as to the use of the door in question. Therefore, Clopay's motion for summary judgment should be denied.

Laurich's Motion for Summary Judgment

Laurich argues that: 1) Clopay's claims against it based upon sole liability are impermissible under Rule 14 of the Federal Rules of Civil Procedure; 2) indemnity and contribution are improper; and 3) it did not possess a duty to inform Clopay of the obvious and it could not have been negligent for installing the door because the codes did not require safety glass. Clopay has not responded in any way to Laurich's arguments based upon Rule 14 and indemnity, and has not responded directly to Laurich's arguments regarding negligence.

Laurich's first argument is that Clopay cannot make claims that it was solely liable under Rule 14. Laurich's argument is not without support. See Toberman v. Copas, 800 F. Supp. 1239, 1242 (M.D. Pa. 1992); Hanko v. United States, 583 F. Supp. 1280, 1284 (W.D. Pa.), aff'd mem., 749 F.2d 26 (3d Cir. 1984).

However, there is considerable authority opposed to the idea of a defendant moving for partial summary judgment as to one theory of liability raised in a complaint. Rule 56 of the Federal Rules of Civil Procedure provides that:

> A party against whom a claim, counterclaim, or cross-claim is asserted or
> a declaratory judgment is sought may, at any time, move with or without
> supporting affidavits for a summary judgment in the party's favor as to all or any

10

part thereof.

Fed.R.Civ.P. 56(b).  The Court of Appeals for the Third Circuit has stated that this rule "does not

contemplate a summary judgment for a portion of a single claim in suit.  Neither does any other

rule of the Rules of Civil Procedure so contemplate, as far as we are aware." Coffman v. Federal

Labs., 171 F.2d 94, 98 (3d Cir. 1948) (citation omitted).  See also  New Jersey Auto. Ins. Plan v.

Sciarra, 103 F. Supp. 2d 388, 396 (D.N.J. 1998) ("Nothing in [Rule 56] can be read to allow

partial summary judgment on only one portion of a claim."); Testa v. Janssen, 492 F. Supp. 198,

204 (W.D. Pa. 1980) ("The Federal Rules of Civil Procedure do not provide for partial summary

judgment for a portion of a single claim."); Connelly v. Wolf, Block, Schorr & Solis-Cohen, 463

F. Supp. 914, 919 (E.D. Pa. 1978) (same).

Clopay also alleges that Laurich is liable based on theories of contribution and indemnity.

Therefore, Laurich's motion for summary judgment on the ground that it cannot be held solely

liable for Plaintiff's injury should be denied.

Next, Laurich argues that a party is only entitled to indemnification when its liability is

based only by operation of law and not based upon its own wrongful conduct, and because

Clopay could only be liable due to its own conduct, its claim for indemnity is improper.

However, the third-party complaint seeks indemnity if Clopay is found liable to Plaintiff under

any theory, including a strict liability cause of action.  Thus, Laurich's general argument should

be rejected.

Further, Laurich argues that only it would be entitled to indemnity from Clopay, but not

vice versa.  However, Laurich cites no authority to support its assertion that as a matter of law a

manufacturer, that is potentially only secondarily liable, cannot seek indemnification from a

distributor, installer, or seller that is found to be primarily liable.

Laurich's final arguments are that it did not possess a duty to inform Clopay of the obvious, and that it was not negligent for installing the door because the codes did not require safety glass. However, its arguments are unsupported. Laurich fails to cite any legal authority to support the argument about lack of duty. In addition, the record evidence indicates that Laurich knew about where the door would be installed and the fact that there was water on the floor, but Clopay did not.

With respect to the argument that the garage door in question did not violate the building codes, whether the door was used for ingress and egress is a disputed question of fact, as explained above. Thus, any negligence by Laurich based upon the potential violation of building codes cannot be determined on summary judgment.

For the foregoing reasons, it is recommended that Defendant's Motion for Summary Judgment be denied. It is further recommended that Third-Party Defendant's Motion for Summary Judgment be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed thirteen (13) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

s/Robert C. Mitchell           
Robert C. Mitchell
United States Magistrate Judge

Dated: November 1, 2006